Norton v. Browne.

No. 9588.

## NORTON v. BROWNE.

AWARD.—*Fraud.*—*Contract.*—*Set-Off.*—In a suit for work and labor in the building of a house, the defendant pleaded, as a set-off, that the work was done under a special contract to build the house for $375; that after it was done a dispute arose as to the character of the work, which was referred to arbitrators, who had awarded the defendant $25, and given notice of their award. Reply, that at an adjourned meeting of the arbitrators the defendant, the plaintiff being absent, by false statements as to the facts, procured the award.

*Held*, that the reply was bad on demurrer.

CONTRACT.—*Abandonment.*—*Evidence.*—*Instruction.*—In a suit for work and labor in erecting a house, it was in question whether a special contract therefor had been abandoned. The jury was instructed that if, by direction of the defendant, the house erected was so different from that contracted for that all traces of the latter were so far lost that the one can not serve as evidence to identify the other, the fact *might be considered* as a circumstance *tending to prove* that the special contract had been mutually abandoned.

*Held*, that the instruction was erroneous.

From the Bartholomew Circuit Court.

*W. F. Norton* and *N. R. Keyes*, for appellant.

*F. T. Hord* and *W. B. Hord*, for appellee.

MORRIS, C.—The appellant sued the appellee for work and labor performed in the erection of a dwelling-house.

The appellee answered the complaint in ten paragraphs, embracing set-offs, counter-claims and matters in avoidance.

The seventh paragraph of the answer alleged that the house had been erected by the appellee under a special contract, by which he agreed to build the same for $375; that after the house had been erected a dispute arose between him and the appellant as to whether the work had been done in a skilful and proper manner; that their differences as to the character of the work had, by agreement, been submitted to two arbitrators, mutually chosen by them; that said arbitrators had made their award, allowing the appellee $25, and given the parties due notice of their award; this award the appellee offered to set off, etc.

The third paragraph of the reply averred that the arbitrators met at the place and time agreed upon, but did not then proceed to make their award, but adjourned to meet at the house erected by the appellant for the appellee, on a subsequent day; that they met according to adjournment, the appellee being present, but that the appellant was not present; that the appellee induced the arbitrators to make said award by making false representations to them as to the work to be done by the appellant.

A demurrer was sustained to this paragraph of the reply. Issues were finally joined on the several paragraphs of the answer. The cause was submitted to a jury, who found in favor of the appellant.

The appellant moved for a new trial. The motion was overruled, and final judgment rendered on the verdict.

The errors assigned are thirty-five in number, involving the ruling of the court upon the demurrer to the third paragraph of the reply, and upon the motion for a new trial.

It does not appear from the reply that the appellant was not present at the first meeting of the arbitrators, nor that he was prevented from attending the second meeting through want of notice of the time and place of such meeting, nor because of any misconduct on the part of the arbitrators or the appellee. Under such circumstances, he can not avoid the award upon the assumption that his adversary took a false view of the matters in controversy or misrepresented the facts; he should have been present and have shown the arbitrators that the statements of his adversary were not true. The court did not err in sustaining the demurrer to the reply.

The appellant insists that about one-half of the seventy charges given to the jury by the court of its own motion misstate the law.

The point mainly contested upon the trial seems to have been as to whether the work was performed under a special contract for a fixed price, as claimed by the appellee, or whether the contract claimed to have been made between the parties

had been abandoned, and a dwelling-house, differing from that provided for in the contract, had been erected by the appellant for the appellee.

Upon this point the thirtieth charge given by the court was as follows:

"If it appears from the evidence that a contract had been originally agreed upon between the parties which prescribes. the manner in which the house is to be constructed, and providing for its several details as to rooms, doors, windows, stairs and finish, and if you further find from the evidence that a house was afterwards constructed by the plaintiff for the defendant; but if you further find from the evidence that there is a difference between the house described in such contract. and the house as finally constructed, and that the difference between them is so great that all traces of the original design in general and in details are so far lost that the one can not serve as evidence of the identification of the other, and then if it appears that these changes were directed by the defendant from time to time as the work progressed, you may consider all this as a circumstance tending to prove that such original contract had been mutually abandoned by the parties."

We think there is error in this instruction; it does not go far enough. The facts assumed in the instruction constituted not simply a circumstance to be considered by the jury as tending to prove an abandonment of the contract, but an actual abandonment of it. If, as assumed by the court,. the contract could not be traced in the building actually erected, nor made to serve for its identification, it would be difficult, if not impossible, to perceive upon what principle it could be resorted to for the purpose of determining the rights of the parties growing out of the erection of the building. If the building could not be identified by the contract —if there was no trace of the contract to be found in the building—it would seem to be quite clear that the one could have no relation to the other. Where, as the instruction assumes, the building erected by the contractor, under the di-

rection of the employer, is so different from that provided for in the contract that the one can not be identified by the other, the conclusion that the parties have abandoned the contract is irresistible.

Where parties enter into a contract for work and labor, and in doing the work there is a departure from the contract, mutually assented to by the parties, the contract may still be used to determine the value of the work so far as it can be followed, but no further. *Wolcott* v. *Yeager*, 11 Ind. 84; *DeBoom* v. *Priestly*, 1 Cal. 206.

As the case must be reversed for error in the above charge, we will not notice the other errors complained of.

PER CURIAM.—Upon the foregoing opinion, it is ordered that the judgment below be reversed, at the costs of the appellee.

### ON PETITION FOR A REHEARING.

MORRIS, C.—The appellee asks a rehearing in this case on the ground that this court erred in holding that the instruction of the court below to the jury did not state the law correctly, and for the further reason that the instruction upon which the judgment was reversed was, if erroneous, harmless.

The instruction which was held to be erroneous assumed a state of facts which showed that the contract claimed to have been made by the parties had been abandoned, and that the work to which it related had been so performed by the mutual arrangement of the parties that no trace of the contract could be found in the work done, and then stated to the jury that such facts, if true, might be considered by them "as a circumstance tending to prove that said original contract had been mutually abandoned by the contracting parties."

We think this instruction was faulty, and calculated to mislead the jury. The facts assumed not only tended to prove, but conclusively established, the abandonment of the contract; yet the instruction impliedly told the jury that the facts did not prove an abandonment of the contract, but only consti-

tuted a circumstance which they might consider as tending to prove an abandonment, and that they might, notwithstanding the assumed facts, find that the contract was still in force and binding upon the parties. It also, we think, by fair implication, told the jury that any change in the work, or departure from the contract, less extensive and complete than that assumed in the instruction, would not be sufficient to establish the abandonment of the contract. We think, as before stated, that the instruction was misleading and erroneous.

The appellee also contends that the appellant should not complain, because he might have corrected the instruction by asking the court to give further instructions to the jury. This may or may not be. It was the duty of the court to state the law correctly to the jury, and if it failed to do this by an incorrect instruction, the injured party, without asking the court to correct its error otherwise than by exceptions, has his remedy by appeal to this court.

The appellee insists that the instruction was harmless, because there was no testimony in the case tending to show an abandonment of the contract.

It was claimed by the appellee that the appellant had entered into a special contract to build for him a house of certain dimensions and finish, for $275, and that the work sued for was done under this contract.

After stating the contract and his bid for the building of the house under it, the appellant testified as follows: " The house I bid on is not the same house I did build. The house I bid on was to have 16 windows and 14 doors; no moulding—all plain work. The house I did build had 20 windows and 28 doors, large and small; moulding on the base-boards and cornice; the windows and doors have mouldings and caps and many changes, and it was not the house I bid on by any means. I understood there was no contract."

Under this testimony, had the jury believed it, they might have found an abandonment of the contract, and had they so

found this court would not have disturbed the finding on the ground that there was no testimony tending to sustain it. Yet, if the jury regarded the instruction given by the court, they could hardly have so found.

PER CURIAM.—The petition is overruled.