EVAN JENKINS *v.* DANIEL FRINK, G. W. MOODY, JAMES C. BRALEY, JACOB SHUMWAY, WESLEY GALLIMORE, AND DANIEL L. MOODY.

COMBINATION TO BUY PROPERTY AT SHERIFF'S SALE.—An agreement in writing among several parties, by which one is to purchase land about to be offered at Sheriff's sale, for the benefit of all the parties to the contract, each furnishing his proportion of the money to the buyer, is not, *prima facie*, fraudulent, nor opposed to public policy.

WHEN A COMBINATION TO BUY PROPERTY AT SHERIFF'S SALE FRAUDULENT.— A contract in writing between several persons, for one to buy land about to be offered at Sheriff's sale, for the benefit of all the parties, is void as against public policy and fraudulent, if made to prevent fair competition in bidding, or for any other fraudulent purpose. But if made for mutual convenience of the parties, to enable each to become the owner of a part of the property, or for any other reasonable or honest purpose, the contract will be valid and binding.

WHEN AN IMPLIED TRUST ARISES.—If several parties contract, in writing, that one shall purchase land about to be offered at Sheriff's sale, for the benefit of all, each to furnish his proportion of the money, and the buyer to convey to each, if no redemption is made, his proportion of the land, and one of the contracting parties after the purchase is effected, on his own account purchases another judgment which makes him a redemptioner, and redeems and obtains a Sheriff's deed, an implied trust arises, and he becomes a trustee *in invitum*, holding the legal title in trust for all the parties to the contract.

WHEN ONE OF SEVERAL PARTIES BECOMES A TRUSTEE FOR ALL.—If several parties are interested in the purchase of land made by one by mutual agreement, neither can exclude the other from what was intended for the common benefit; and any private benefit touching the common right which is secured by either party will turn him into a trustee for the benefit of all.

PARTIES TO AN ACTION TO ENFORCE A TRUST.—In an action by one of several *cestuis que trust*, to declare and enforce an implied trust in relation to land, all the persons who are entitled to or claim to be entitled to a portion of the trust estate, are proper parties defendant.

FINDINGS OF FACT.—If the findings of fact are defective, the presumption is that proof was made at the trial in relation to the defective matter, and the judgment will not be reversed unless the findings are excepted to.

NEW TRIAL.—A new trial will not be granted except on a statement or affidavits.

WHEN JUDGMENT WILL NOT BE REVIEWED ON APPEAL.— A judgment cannot be

reviewed on the ground of a defective complaint, or that the judgment is not warranted by the findings, on an appeal from an order denying a new trial.

JUDGMENT OF ONE DEFENDANT AGAINST ANOTHER.—Case where one defendant recovered judgment against another defendant, but its legality not decided.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

Braley and Gallimore appealed.

The other facts are stated in the opinion of the Court.

*J. P. Hoge,* for Appellants.

*The agreement annexed to the complaint being contrary to public policy, is illegal and void.* By its terms the parties thereto stipulate that instead of each bidding for himself at the foreclosure sale, one of their number shall represent them all. The effect of the agreement was to prevent competition at the sale, and thereby injure the judgment debtor as well as those having subsequent liens or demands against him.

"An agreement between two or more persons not to bid against each other at auction, is considered as void whenever it operates as a fraud, and is done for the purpose of preventing competition." (Story on Sales, Sec. 495.)

True, the author goes on to add that "if it," the agreement, "be *bona fide* and made for the purpose of enabling the two together to purchase what either alone *would not or could not* purchase, it will be held to be valid." (Ib., Sec. 495.) For the latter doctrine he cites the case of *Veazie* v. *Williams,* 3 Story, 620, decided by his father, but it seems to us that the opinion of that learned Judge does not at all sustain the position. (3 Story, 620.)

On the above point Mr. Hoge cited *Thompson* v. *Davis,* 13 John. 112 ; 3 John. 29 ; 6 John. 144 ; 8 John. 443 ; 4 Cowen, 732 ; and 4 Johns. Ch. 257. Mr. Hoge further argued that the agreement contained no evidence of any trust between the parties, but that in its legal effect it was a separate agreement between Frink and each of the other parties, by the terms of which he was to perform certain acts for their separate benefit, and that there was no community of interest between them,

as each was entitled to a separate tract of land—the tract of which he was possessed. He also argued that Braley and Gallimore could not be regarded as trustees of a resulting or constructive trust, because they stood in no confidential or fiduciary relation to Shumway or his grantee, from which a trust could be inferred. He also argued that Frink and Moody had no joint or common interest with plaintiff or defendants Braley and Gallimore, and were not necessary parties to a complete adjudication of the controversy, and that they were improperly made defendants; and cited *Peralta* v. *Simon*, 5 Cal. 313; *Baily* v. *Inglee*, 2 Paige, 278; *Wendell* v. *Van Rennselaer*, 1 John. Ch. 437; *Murray* v. *Hay*, 1 Barb. Ch. 59; and *Le Fort* v. *Delafield*, 3 Edward's Ch. 32.

*Patterson, Wallace & Stow*, for Respondent Jenkins, argued that the agreement was not contrary to public policy, as it was a mere association of capital to purchase a tract of land that neither of the parties *would* or *could* purchase as an *entirety;* that the parties to the agreement were in possession at the time of the sale of distinct portions in severalty of the four hundred acre tract; and the whole purpose of the agreement was that each might secure his several possession; and that it did not conflict with the morals of the times nor contravene any established interests of society; and cited *Phippen* v. *Stickney*, 3 Met. 384; *Small* v. *Jones*, 1 Watts & Serg. 128; and *Smith* v. *Greenlee*, 2 Dev. 129.

They also argued that Braley and Gallimore could not redeem for their own benefit, because the parties to the agreement were tenants in common in equity of any estate which might grow thereout, and as a mere result of this relation neither party could be permitted to do any act to impair the right of the other; and any new claim to the estate acquired by either party must enure to the benefit of all the others; and cited *Flagg* v. *Mann et als.*, 2 Sumner, 523; *Van Horne* v. *Fonda*, 5 John. Ch. R. 406; *Burhans et als.* v. *Van Zandt et als.*, 3 Selden, 523; *Armour* v. *Alexander*, 10 Paige Ch. R. 572; *Rupp* v. *Orr*, 31 Pa. State R. 519; *Rothwell* v. *Dewees*,

2 Black, S. C., U. S. R. 618; *Venables et als.* v. *Beauchamp,* 3 Dana, 321.

They also argued that Frink and Moody were necessary parties defendant, because the plaintiff claimed the exclusive right to the eighty-five acres described in the complaint, and the others each claimed a distinct parcel, and for that reason they should not have been united as plaintiffs; that the distinct right of each to a separate parcel sprung out of an agreement to which all the others were parties and in which they were interested, and that Frink had a right to have a complete adjudication in one action, and was not obliged to litigate by piecemeal. On this point they cited 3 McLean, 31, 32; Story's Eq. Pl. 544; 1 Daniel's Ch. Pr. 359; *Cherry* v. *Monroe,* 2 Barb. Ch. 627; and *Dean* v. *Winston,* 26 Mo. 213.

*Thomas Bodley,* for Respondents Frink and Moody, confined his argument to a motion to dismiss the appeal.

By the Court, SHAFTER, J.:

This action was brought to compel the defendants Braley and Gallimore to convey to the plaintiff eighty-five acres of land, parcel of a tract of four hundred acres, situate in the County of Santa Clara. Braley and Gallimore demurred to the complaint on the ground that the facts stated did not constitute a cause of action, and on the further ground that Frink and Moody were improperly joined as defendants. The demurrer was overruled and the defendants answered. The case was tried by the Court on the issues of fact and the plaintiff had judgment for the relief demanded; and a decree was also entered against Braley and Gallimore adjudging and directing them to convey to their co-defendant Moody seventy acres of said four hundred acre tract, and one hundred and eighty acres thereof to defendant Frink, on grounds set up in their joint answer to the complaint. Braley and Gallimore moved for a new trial, but there being no statement in support of the motion, the motion was denied. The appeal is

from the order and from each of the three judgments entered in the action.

The case presents but two questions: first, as to the correctness of the order overruling the demurrer; second, as to whether the judgments are sustained, respectively, by the findings.

First—The complaint charges that one Williams became the owner, in December, 1857, of four hundred acres of land in Santa Clara County, parcel of a Mexican grant known as "Posolmi" or Ynigo Rancho, and that in December, 1858, he mortgaged it to Esnault. That Williams thereafter put another mortgage on the same parcel, in favor of one Kealy. That the mortgage to Esnault was foreclosed under proceedings to which Kealy, the subsequent encumbrancer, was a party defendant, the decree therein bearing date September 21st, 1860. That the defendant Frink became the purchaser at the Sheriff's sale for the sum of three thousand four hundred and fifty dollars, which said sum was sufficient to pay the Esnault judgment and costs, and the sum of forty-two dollars and forty-five cents on the Kealy debt, leaving a portion of said debt unpaid. That at the time of the sale to Frink, he was in possession in severalty of one hundred and ninety-eight acres of said tract; Moody, of seventy acres; Braley, of thirty-five acres; Shumway, to all of whose rights the plaintiff has come by assignment, of eighty-five acres, and Gallimore, of twelve acres. That Frink purchased the four hundred acres "in trust for and for the use and benefit" of himself, the defendants Moody, Braley, Gallimore and Shumway, plaintiff's assignor, "to be held and owned by them in their respective portions aforesaid; and the purchase money of said premises paid by Frink was advanced to him by Moody, Braley, Gallimore and Shumway, in the respective proportions aforesaid, for the purpose of purchasing said premises at said sale for the benefit of himself and said parties in the proportions aforesaid." That Frink agreed with said parties, and that they agreed with each other, to the effect that Frink should hold the lands in trust for himself and them, and

that in the event a redemption from said sale should not be effected, said Frink would convey said premises to the other parties in the respective proportions aforesaid, retaining to himself the part whereof he was possessed in severalty. The agreement was reduced to writing, June 13th, 1861, and a copy thereof is annexed to and made part of the complaint.

It is further alleged that after the plaintiff had succeeded to the rights of Shumway, the defendants Braley and Gallimore " fraudulently confederated together for the purpose of depriving the plaintiff and the other parties to the agreement, except themselves, of the benefit thereof, and of the title to the respective portions of the said four hundred acre tract, * * * and with that view purchased from Kealy, for a nominal sum, the judgment and decree rendered in his favor in said Esnault suit, and caused the same to be assigned to them. * * * * Within six months from said sale to Frink, they effected a redemption of said premises from said sale, and thereby prevented Frink from receiving the Sheriff's deed of conveyance of said four hundred acre tract, and thereby acquired the legal title to said tract themselves, and have received a Sheriff's deed therefor; that Frink is therefore unable to convey the eighty-five acres claimed by the plaintiff, and that the defendants Braley and Gallimore, who have the power, have refused so to do on demand."

### Agreement opposed to public policy.

It is insisted for the appellants that the agreement set up in the complaint is illegal and void, for the reason that it is opposed to public policy.

We do not consider that the agreement is on its face obnoxious to the objection. It was held in *Phippen* v. *Stickney*, 3 Met. 388, that an agreement to the effect that one of the parties would permit the other to become the purchaser of property about to be offered for sale at public auction, and that the two should share the benefits of the purchase between them, was not fraudulent *prima facie*. That whether fraudulent or not would depend upon intention. That where such

arrangement is made for the purpose and with the view of preventing fair competition, and by reason of want of bidders to depress the price of the article offered for sale below the fair market value, it will be illegal, and may be avoided as between the parties as a fraud upon the rights of the vendor. But that, on the other hand, if the arrangement is entered into for no such fraudulent purpose, but for the mutual convenience of the parties, as with a view of enabling them to become purchasers, each being desirous of purchasing a part of the property offered for sale, and not an entire lot, or induced by any other reasonable and honest purpose, such agreement will be valid and binding. While the complaint in the case at bar certainly does not state or confess that the agreement set out therein was made for the purpose of depressing the price of the land in question by preventing fair competition at the Sheriff's sale, it does state affirmatively another and distinct purpose, and one, too, that in the case cited was held to be perfectly legitimate. It was held in *Small* v. *Jones*, 1 Watt & Serg. 128, that parties may purchase jointly at a Sheriff's sale if all be open and fair. That a combination of interests for that purpose is not necessarily corrupt. That it is the end to be accomplished, which makes such combinations lawful or otherwise; if it be to depress the price of property by artifice, the purchase will be void; if it be to raise the means of payment by contribution, " or to divide the property for the accommodation of purchasers," it will be valid. It was considered in *Switzer* v. *Skiles*, 3 Gilman, 529, that " where a sale of land is made at public auction, and all persons are at liberty to bid, an agreement among different claimants to different portions of the land with an individual to purchase the whole tract for their benefit, is not such an agreement as is calculated to prevent competition, and thereby to render the sale void." In *Smith* v. *Greenlee*, 2 Dev. 129, the Court, while it sustains the general doctrine that a sale may be avoided when made to one in behalf of an association of bidders, designed to stifle competition, yet concedes that this rule would not apply to an association of bidders formed

for honest and proper purposes, as in the case of a union of several persons formed on account of the magnitude of the sale, or "where the quantity offered to a single bidder exceeded the amount which individuals might wish to purchase on their own account."

We consider these cases, though not entirely in harmony with some other decisions, as furnishing the true exposition of the rule of the common law. There is no principle of right reason upon which it can be held that the agreement now in question was calculated to keep bidders away from the auction, or to prevent free and intelligent competition among those who attended it; while it is apparent, on the other hand, that one bidder at least attended the sale in consequence of the agreement, and who, for aught we can know to the contrary, would have staid away if the agreement had not been made.

*Second*—The bill goes upon the theory that Braley and Gallimore hold the eighty-five acre tract in trust for the plaintiff as assignee of Shumway, and it is claimed for the appellants that the facts stated do not bear out the theory.

### Implied trust.

The trust relied upon does not stand upon intention, but is one of the implied trusts which, under certain circumstances, are forced upon the conscience of parties by operation of law, and upon which the Statute of Frauds does not operate. Under the agreement, Frink became the common agent of Shumway, Moody, Braley and Gallimore to purchase the property and to take the title on failure of redemption; and to convey to each of the associates thereafter the parcel of which he was in possession. This was not only the agreement as between Frink and the others taken as a body, but each of the parties pledged his faith to the other that Frink should be allowed to execute the commission which they had unitedly conferred upon him. It was on the faith of this arrangement alone that the purchase money was advanced by the parties respectively, and when the certificate of purchase was issued to Frink, he

75

unquestionably held the inchoate right evidenced by it in trust for his associates, less the parcel of which he was himself in possession. Of this right, so acquired and paid for out of a common fund, the five associates were tenants in common in equity; the fractional share of each being fixed in the contract, and a method pointed out therein by which the land, when the contingent right should have run into a title could be handily partitioned. (*Schenck* v. *McEvoy*, 24 Cal. 104.) Kealy was a judgment creditor, having a lien upon the land, and that fact was a standing reminder that the principal purpose of the associates might be defeated by a redemption on his part. It was, therefore, neither fraudulent nor improper, in itself considered, for Braley and Gallimore to buy up the Kealy judgment for the protection of the common plan, but the claim so acquired could not, on the principles of equitable dealing, be used by them to secure the whole of that to themselves which they had agreed to share with others, and on the faith of which agreement their associates had already acted. They were bound by the express contract to co-operate with the other parties in securing the objects for which the union was formed, and it is settled that if parties are interested together by mutual agreement, and a purchase is made agreeably thereto, neither party can exclude the other from what was intended for the common benefit; and any private benefit touching the common right which is secured by either party will turn him into a trustee for the benefit of both or all. (*Flagg* v. *Mann et al.*, 2 Sum. 490; *Van Horne* v. *Fonda*, 5 John. Ch. R. 406; *Burhans et al.* v. *Van Zandt et als.* 3 Seld. 523; *Armour* v. *Alexander*, 10 Paige, 572; *Rupp* v. *Orr*, 31 Penn. 517; *Switzer* v. *Skiles*, 3 Gil. 529; *Rothwell* v. *Dewees*, 2 Black. 618; *Venable* v. *Beauchamp*, 3 Dana, 321.)

*Complaint to enforce implied trust.*

Third—The objection that the complaint does not state facts forming the basis of a trust *in invitum* is not well taken. There is something more charged than that " the defendants Braley and Gallimore fraudulently confederated together for

the purpose of depriving the plaintiff and the other parties to the agreement, except themselves, of the benefit of said agreement." The fiduciary relation established by the written agreement is fully developed in the complaint, and the conduct of the appellants, in violation of the duty springing from that relation, is also set forth at large.

Fourth—It is urged that the complaint is defective, for the reason that it neither avers an offer to repay to the appellants the plaintiff's share of the redemption money advanced by them, nor an offer to repay any part of the amount expended in purchasing the Kealy judgment.

It does not appear from the complaint that any portion of the redemption money ever came to the hand of the plaintiff, and as to the money paid by the appellants for the Kealy judgment, it is averred that it was only nominal in amount.

### Parties defendant.

Fifth—We consider that Frink and Moody were properly joined as defendants. They might, consistently with the general relation existing between the parties, have disputed the averment that the plaintiff was entitled to that part of the four hundred acre tract described and claimed in the bill, and they were therefore not only proper but necessary parties to a complete determination or settlement of the questions involved. (Prac. Act, Sec. 13.)

### Findings of fact.

Sixth—It is further objected that the judgment in favor of the plaintiff should be reversed, for the reason that it is found that he received from the Sheriff his proportion of the redemption money paid by appellants, and that it is not found that the plaintiff offered to return the money before action brought.

The answer is, that the judgment cannot be reversed on that ground, inasmuch as the findings were not excepted to as defective. (Acts 1861, p. 589, Sec. 2.) It must be presumed, as the record stands, that an offer to return the redemption money was proved at the trial.

*What can be reviewed on appeal from order denying new trial.*

Seventh—It is insisted that the judgment in favor of Frink, and that also in favor of Moody, should be reversed, on the ground that a case was not presented in which one defendant can have judgment against another.

It is not necessary to pass upon this question on its merits, inasmuch as the appeal from neither of these judgments was taken within a year from its rendition. The appeal from the order denying a new trial was taken in time, but counsel is mistaken in supposing that a judgment can be reviewed, under an appeal of that impression, on the ground of a defective complaint, or on the ground that the judgment is not warranted by the findings. A new trial is " a re-examination of an issue of fact in the same Court, after a trial and decision by a jury, Court or referees," and is never granted except on a statement or affidavits, and neither are found in this record.

Judgment affirmed.

Mr. Justice RHODES, being disqualified, did not participate in the decision of this cause.